OPINION OF THE COURT
John T. Buckley, J.
This is a CPLR article 78 proceeding in which petitioner seeks an order vacating a decision after fair hearing which *634 found that an administrative hearing was an unavailable forum for a dispute regarding coverage under the medical assistance program for an elderly nursing home patient. This case is a companion to another article 78 proceeding which this court decides today, Matter of Bailey (RJI No. 32-95-542 [Sup Ct, Oneida County]) and, since the factual differences between these two cases are unimportant to the legal analysis or outcome, the decisions closely track one another. Respondents vigorously assert that the failure to request "fair hearing” administrative review within 60 days of the issuance of a discontinuation notice operated as a time bar depriving the Administrative Law Judge of jurisdiction to hear evidence and render a decision on the dispute. (18 NYCRR 358-3.5 [b] [1].) Petitioner claims that the 60-day Statute of Limitations should have been "tolled” since the notice was only sent to the patient, an individual whose affairs were being handled by a personal friend. This court perceives the limitations argument from a different perspective. The threshold question is whether the 60 days ever began to run at all. An adequate and timely notice must be issued before ascertaining whether it was tolled. (18 NYCRR 358-2.15, 358-3.3; Matter of Zellweger v New York State Dept. of Social Servs., 74 NY2d 404 [1989].) If the discontinuation notice was defective, the issue then becomes whether there is any remaining basis upon which the refusal to make payments for services otherwise covered by medical assistance coverage can be justified.
The essential question for this court is to whom the discontinuation notice should have been mailed. The court finds that the notice was defectively issued because it was not sent to the recognized representative of the medical assistance beneficiary. This matter should, as a matter of fairness to the local agency, be remanded for any further proceedings, if necessary, consistent with this opinion.
The essential facts underlying the present controversy are not in dispute. Ms. Isabelle Watts was a recipient of medical assistance which paid for her care in the Oneida City Hospital Extended Care Facility (ECF) from 1986 until November of 1991. Ms. Watts had been eligible during that five-year period for medical assistance. There is no claim that Ms. Watts’ financial condition had changed with respect to income or resources as of November 1991 or subsequently Ms. Watts’ original application in 1986 had been submitted by a personal *635 friend, Barbara Carpenter, as permitted by regulations promulgated and enforced by the New York State Department of Social Services (State agency). (18 NYCRR 350.4 [c].) Subsequent to providing a recertification form in November of 1991, the local agency issued a notice of discontinuation of medical assistance coverage claiming that no completed recertification form had been returned. No personal interview with Ms. Watts or Ms. Carpenter was conducted in connection with the claimed failure to provide the requested verification. (18 NYCRR 360-2.2 [f].) There is also no indication from the record that the local agency confirmed, prior to issuing the notice, that the proposed action of discontinuing medical assistance to Ms. Watts was proper in these circumstances or in the manner contemplated. (18 NYCRR 358-4.1 [a], [b].) The local agency notified Ms. Watts on November 18, 1991 that medical assistance coverage for Ms. Watts’ residential care would be discontinued based upon the failure of Ms. Watts or her representative to provide such information as required by the recertification process. There is no claim by respondents that Ms. Watts had any ability to respond in a meaningful manner to a notice that her only apparent source of payment for her residential care was being discontinued.
The State regulation which permits a personal friend to become an applicant or recertify for one who claims to need medical assistance specifically conditions that ability to act for a person "because of physical incapabilities, or mental incompetency.” (18 NYCRR 350.4 [c] [4].) The regulations also require that the local agency investigate and verify all aspects of eligibility. (18 NYCRR 351.1 [a], [c].) The court can only assume, since the local agency accepted the original application and certified Ms. Watts as an eligible recipient of medical assistance for five years, that Ms. Carpenter was found to be an appropriate individual to apply on behalf of Ms. Watts because she was incapable of doing so for herself. Having once demonstrated to the agency’s satisfaction that Ms. Watts required the assistance of another individual, it was not logical to presume that Ms. Watts had no need for such help at a point in time when her medical assistance eligibility was at issue. It would be only reasonable to assume that if Ms. Watts could not apply or recertify for herself, she similarly could not be expected to do whatever was necessary to either accept or contest a discontinuation of the only evident source of payment for her institutional care. It is, however, also undisputed that no discontinuance notice was sent to anyone other than Ms. Watts.
*636 This discontinuation of coverage for Ms. Watts’ care at the Oneida City Hospital ECF went unnoticed until after the time of Ms. Watts’ death. Subsequent to her death, numerous attempts have been made by the facility as well as Ms. Carpenter to obtain payment from the local agency for Ms. Watts’ unpaid bill. The current round of this dispute involves the defense raised by the local agency and adopted by the State agency that the "fair hearing” request was untimely since made more than 60 days after issuance of the notice of discontinuance.
From the foregoing, it is evident to this court that the 60-day Statute of Limitations did not begin to run since the notice was not issued properly. Bad notice is no notice. In order to afford an individual entitled to receive adequate notice a meaningful opportunity to contest adverse agency action, it must be issued to an individual with the capacity to respond. It is clear from the record before this court that Ms. Watts as early as 1986 was unable to manage her own affairs and that the local agency recognized this as an operative fact by accepting the signature of a personal friend in lieu of Ms. Watts’ on her original application. The local agency also accepted the recertification application without objection to the same personal friend’s signature. Aside from the regulation which conditions the ability of a person to have another apply for them, the court also notes that application and recertification forms purport to bind the signatory to a range of obligations. Having undertaken those obligations, Ms. Carpenter was entitled, as an applicant, to notification of any adverse action by the agency. (18 NYCRR 358-2.15, 358-3.3.) While the agency may have also dealt with other individuals at the Oneida City Hospital ECF in connection with Ms. Watts’ eligibility, Barbara Carpenter had become, through the local agency’s acceptance of the original application, Ms. Watts’ "designated” representative. As such, she was entitled to notification of any adverse action by the agency. (Matter of Zellweger v New York State Dept. of Social Servs., 74 NY2d 404 [1989], supra.) There is simply no other way to view the undisputed facts on this record.
To ensure that Ms. Watts was afforded her opportunity to avail herself of a "fair hearing” as one method of resolving her dispute with the local agency, Barbara Carpenter was an indispensable person to be noticed. Having failed to provide her with adequate notice, the local agency was without any authority apparent to this court to discontinue medical assistance to Ms. Watts. Having failed to provide her with adequate notice, *637 no 60-day limitation period could run. The Administrative Law Judge was in error when he applied such limitation period to bar petitioner’s claim. The proper analysis would have required the local agency to demonstrate what authority it claimed as justification for nonpayment in the absence of an adequate notice. Although this court cannot identify any authority for continued nonpayment in this case, including those raised or discussed in either the decision after fair hearing or the respondents’ memorandum, since respondent local agency appears to have relied mainly upon the Statute of Limitations defense, the matter will be remanded for further proceedings. Since the decision after fair hearing incorrectly applied the limitation period as a bar to further review of the local agency refusal to treat Ms. Watts as a recipient of medical assistance until her death, this court will vacate such administrative determination and remand this matter for a new hearing which will be limited to the sole issue of the local agency’s authority, if any, to refuse payment for services received by Ms. Watts in the absence of an adequate notice discontinuing her eligibility for medical assistance.
Having reviewed the written submissions identified in Appendix A and due deliberation having been had, it is hereby ordered that petitioner’s application is granted on the first cause of action and to the extent that the decision after fair hearing is annulled and this matter is remanded to respondent Commissioner of Social Services of the New York State Department of Social Services for further proceedings consistent with this opinion, and it is hereby ordered that this court retains jurisdiction of this matter for any further application by petitioner for ancillary relief.